ARCHIBALD BLACK, Appellee, v. H. C. MILLER, Administrator of the Estate of GEORGE BLACK, Deceased, Appellant.

**Estates of decedents:** CLAIMS: WITHDRAWAL: REFILING. After filing his claim against the estate consisting of several items, claimant served notice of the claim upon the administrator, stating therein that all but two of the items were for the present withdrawn and would be withheld until the court passed upon his petition in another action, in which he claimed a conveyance of certain land in consideration of services covered by the withdrawn items, and that the other items would come on for trial. *Held,* that the withdrawn items were not dismissed from the claim as filed, but even if they were, the estate remaining unsettled, claimant was entitled under the circumstances to refile the same by an amendment after disposition of the other action.

**Same:** FORMER ADJUDICATION: ESTOPPEL. In a former action by decedent's children to partition certain real property, claimant pleaded an oral agreement with decedent to convey to him certain of the land in consideration for the care and support of decedent during his natural life. His claim as made in that action was dismissed as being without support in the evidence, and without any reservation whatever of his rights in the premises. *Held,* that the decree was an adjudication barring his right to recover on a claim against decendent's estate for the reasonable value of the same service.

**Specific performance:** DISCRETION. Specific performance of a contract is not a remedy which a litigant may demand as a right, but it rests in the sound discretion of the court; where, however, the evidence is sufficient and there are no equitable considerations in the way such decrees are entered as a matter of course.

**Negotiable instruments:** GENUINENESS OF SIGNATURE: PROOF. Where the original note upon which an action is founded, or a copy thereof, is attached to the petition, the genuineness of the signature to the note will be presumed, unless denied under oath by the person whose signature it purports to be; but where neither the original nor a copy was attached to a claim filed against the estate, and all items of the claim were denied, the burden was upon claimant to establish the genuineness of the signature to the note before its admission in evidence.

**Instructions:** PRESERVATION OF EXCEPTIONS. The statute authorizes the reporter to note in his report of the trial, in shorthand or in writing, the fact that the jury is instructed and all exceptions and objections to the instructions given by the court on its own motion, and this report when properly certified is sufficient evidence of the taking of exceptions to the instructions; but there is no authorized preservation of the record of exceptions by the mere certificates of the judge and reporter that they were taken.

**Instructions.** The trial judge in his instructions should clearly state the issues rather than copy the pleadings as a part thereof; and he should not assume the genuineness of decedent's signature to a note sought to be proven against his estate.

**Use and occupation:** PRIMA FACIE CASE. To establish a claim for the use and occupation of decedent's land, it is not necessary for the administrator to show that there was a mutual understanding that decedent was to receive pay for the use of the land. Proof that the occupant entered upon the land, used and occupied it for his own benefit, with the assent of decedent, implies a promise to pay the reasonable value of the use, in the absence of proof that the use had been paid for or that it was gratuitous; and such defense must be pleaded to be available.

**Same.** The rule with respect to the rendition of services by a relative living in the family has no application to a claim against an occupant of decedent's land for its use while decedent was living with and being supported by the occupant.

*Appeal from Jefferson District Court.*—HON. M. A. ROBERTS, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

THE claim of plaintiff was allowed against the estate of George Black, deceased, in the sum of $2,500. The administrator appeals.—*Reversed.*

*Crail & Crail,* for appellant.

*Leggett & McKemey,* for appellee.

LADD, J.—The plaintiff filed his claim against the estate of George Black, deceased, March 10, 1908, consisting of sev-

enteen items.  The first fourteen items, except the twelfth,
related to purchases for or improvements on land.   Item
fifteen related to the amount claimed to be due on a note, and
the twelfth item was for money borrowed.  The sixteenth item
was for services in caring for stock and work on the farm,
and the seventeenth was for "board, washing, and mending
twenty years, 1,040 weeks, at $1.50 per week, $1,560."

In September, 1908, term of the district court the plain-
tiff caused to be served on the administrator notice of the filing
of the claim, and "that the items of said claim except Nos.
twelve and fifteen are for the present withdrawn," and that
the claim in respect to the said items would come on for hear-
ing on the 5th day of October, 1908, and "that the remaining
items of said claim are withheld until the court passes upon
the petition of said Archibald Black and wife to quiet his
title" to sixty acres of land described, which lands George
Black agreed to convey to said Archibald Black in considera-
tion of the services covered by said remaining items of the
claim.   No trial was had at the time stated, and on November
12, 1910, plaintiff filed what is designated as an "amendment
to claim," alleging therein that he amended "his claim here-
tofore filed against this estate by changing the seventeenth
item of the claim so it will read as follows: First. ' (17). Board-
ing, washing, and mending, twenty years, 1,040 weeks, at $3
per week, $3,120, total amount of claim, $5,170,' and files
again the claim as amended.   Second.   He shows that this
claim was not filed heretofore in the present form, because of
the pendency of certain litigation in this court in reference to
the partition of the real estate of said George Black, in which
this claimant presented the claim to sixty acres of land under
the verbal agreement of the deceased; that claimant should
have the same in consideration of the services hereinbefore
stated; that said cause was pending in the courts of this state
until the —— day of ——, 1910, when the same was de-
termined by the court's finding against the claim of this
claimant of said land, on the ground that same was not sus-

tained by sufficient evidence to comply with the rules of the court in such cases.'' The defendant answered denying each item of the claim and that the estate was in any wise indebted to claimant, and pleaded that the claim was not filed within a year after the appointment of defendant as administrator of the estate of deceased and that the circumstances alleged were not sufficient to authorize the filing of the claim there-after. The answer also pleaded a former adjudication and interposed a counterclaim for the use and rental of the land. To this answer the claimant filed a demurrer in several grounds: (1) That the claim for the items in controversy was never withdrawn. (2) That, as the claim was filed within six months after the appointment of the administrator, claimant was entitled to prove the same. ` (3) That the record affirma-tively showed equitable reasons sufficient to excuse delay in the time of filing the claim, if delay there was. (4) That the facts pleaded did not constitute a former adjudication. The demurrer was sustained, and we shall first dispose of those grounds assailing the claim as filed.

I. It will be observed that the several items of the claim were only ''for the present withdrawn,'' and that the two ex-cepted items were to come on for trial; and further on the notice recites that ''the remaining items of

1. ESTATES OF DECEDENTS: claims: with-drawal: refil-ing.

said claim are withheld until the court passes upon the petition of said Archibald Black and wife to quiet his title in sixty acres of land,'' describing it. Plainly enough the purpose of the notice was to bring the two items on for trial, and in doing so to with-draw the others from the trial, but not from the claim as filed. Whether this might be done is not important, for the proposed trial did not proceed and the claim continued on file as before the service of the notice. We are of the opinion that the items thereof were never actually withdrawn from the claim, and that even if they were, under the circumstances disclosed, i. e., that the estate was unsettled, that the two items were undisposed of, and the amendment filed within five

months after the final disposition of the case, involving the same matter, presents a case calling for equitable relief in permitting the filing of the amendment to the claim more than one year after the appointment of the administrator and when it was filed. See *Asher v. Pegg,* 146 Iowa, 541.

II.    In count 3 of the answer the defendant plead the decree in *Black et al. v. Chase et al.,* 145 Iowa, 715, as *res adjudicata* and by way of estoppel.    The petition in that

2. SAME: former adjudication: estoppel.

action was by three children of the deceased praying for the partition of two hundred acres of land left by him. Three other children, Samuel, George, and Arch, set up claims to forty acres each, and subsequently Arch (with his wife) amended his answer by alleging an oral agreement with deceased, said to have been made in 1886, whereby they were to make their home with, care for, and board deceased during the remainder of his life, and as compensation therefor to have sixty acres of land, that they had performed the contract, and prayed that title to said land be quieted in Arch, or the administrator be required to execute a deed therefor, in compliance with said agreement.    On hearing, the several forties were held to belong to those claiming them, but the amendment of Arch Black to his answer, setting up said agreement and praying for the conveyance of the sixty acres in compliance therewith, was dismissed and decree entered "that the claim of Arch Black to own sixty acres is without merit and not substantiated by the evidence."

In this action Arch Black presented his claim against the estate of the deceased for the care and board alleged in said amendment during precisely the same period, and prayed that it be established for the value thereof.    The evidence relied on was the same in both cases, save that in the last trial proof of the reasonable value of such board and care was adduced.    The only evidence of deceased's expectation to pay for the board and care introduced on the last trial was that of his agreement to give Arch the sixty acres of land alleged

in the amendment to the answer in the first action. So that in each trial the claimant herein relied on the same proof of furnishing care and board and upon the alleged agreement to pay therefor by transferring the sixty acres of land, in the former praying that he have the land as compensation, and in the latter that payment therefor be from the funds of the estate. In other words, the issues in both actions are the same; the relief sought only being different. It is plain enough that, had the issues now being tried been first determined, the decision would have been conclusive in an action for specific performance. Is the converse true?

Of course, to recover in this action, proof that the board and care were furnished with the mutual expectation of the father to pay, and the son to receive, compensation therefor, would be sufficient. *Tank v. Rohweder*, 98 Iowa, 154; *Weitnaur v. Weitnaur*, 117 Iowa, 578. But no testimony of this character was introduced, save as this might be inferred from the evidence of a promise that the son should have the land. Under the evidence, then, if there was to be compensation at all, this was to be the land, and the measure of recovery should be the land, or, in event this cannot be conveyed, then clearly enough claimant would be entitled to its value. It may be conceded that the causes of action are different, the one having been prosecuted in equity and the other at law, the relief sought in one being specific performance and in the other compensation by way of damages, but the same essential issues were involved in each: (1) The existence of the contract and (2) the performance of the services. These were determined in the former action, for there was a hearing and no reservation in dismissing the cross-bill.

Where there is a hearing, and no such words as ''without prejudice'' appear in the decree, and no reason for dismissal is stated therein, and a decision on the merits is in no wise negatived, the issues raised are presumed to have been heard and decided on the merits. *Durant v. Essex Co.*, 7 Wall. 107, (19 L. Ed. 154); *Carberry v. Railway*, 44 W. Va. 260, (28 S.

E. 694); 2 Black on Judgments, section 720. See *Finch v. Hollinger*, 46 Iowa, 216; *Hahn v. Miller,* 68 Iowa, 745. Says Story, in his Equity Pleading (793): "A decree or order dismissing a former bill for the same matter may be pleaded in bar to a new bill, if the dismission was upon the hearing and was not in terms directed to be without prejudice." It was said in *Taylor v. Yarbrough,* 13 Grat. (Va.) 183: "A bill in equity having been dismissed generally without a reservation of any right of the plaintiff to sue thereafter, is conclusive upon all the issues made up in the case." An error may be predicated on the omission to so indicate in the decree dismissing a cause on hearing if this is done for want of jurisdiction or other cause not going to the merits. Freeman, Judgments, section 270A; 2 Black, Judgments, section 720. The circumstance that the former suit was in equity and that now considered at law is not material, as both are triable in the same court. *Madison v. Garfield Coal Co.,* 114 Iowa, 56; *Bruce v. Foley,* 18 Wash. 96, (50 Pac. 935); *New York Cent. Ins. Co. v. National Protection Ins. Co.,* 14 N. Y. 85.

That the issues essential to recovery by the claimant in this action were decided against him in the former suit is put beyond controversy by the record and ordinarily must have been regarded as conclusive in support of the plea of estoppel. *Madison v. Garfield Coal Co.,* 114 Iowa, 56; *Reynolds v. Babcock,* 60 Iowa, 289; *Stevens v. Wadleigh,* 6 Ariz. 351 (57 Pac. 622); *Southern P. R. Co. v. U. S.,* 168 U. S. 1 (18 Sup. Ct. 18, 42 L. Ed. 355), 23 Cyc. 1218. But appellee would obviate this result by saying that, whereas strict proof was exacted to make out a case in the former suit, it was only necessary to establish his claim in this action by a preponderance of the evidence; and further that, in prosecuting the former suit, plaintiff merely mistook his remedy, and, though defeated, may demand an appropriate remedy in a subsequent action. The last proposition may be disposed of on two grounds: (1) The claimant did not fail in the former suit because of having mistaken his remedy but owing to a failure of proof, and (2) even if

there were a mistake in the remedy sought, the essential facts to sustain his claim to a different remedy were conclusively adjudicated against him in that action.

Nothing contained in the decisions cited by the appellee indicates that the conclusive character of a decision of an issue in a former suit is obviated by the circumstance that the plaintiff might have prosecuted a different action or have sought a different remedy. In *Zimmerman v. Robinson & Co.*, 128 Iowa, 72, it appears that plaintiff's assignor had prosecuted an action for the recovery of the price paid on a machine on the theory that the contract of purchase had been rescinded, and it having been decided on appeal that, as the machine had not been returned or a return tendered, recovery might not be had (*Zimmerman v. Robinson*, 118 Iowa, 117), it was held that the prosecution of that action was not an election of a remedy inconsistent with the maintenance of an action for a breach of warranty in the contract. Manifestly there was no issue decided in the one action, which was essential to the maintenance of the other, and this was true in *Lemon v. Sigourney Savings Bank*, 131 Iowa, 79, where an action was first prosecuted against the bank for the amount of deposit which it appeared had been paid by the defendants in notes of third parties payable to the plaintiff, and it was held that this was not an adjudication constituting an estoppel in a subsequent suit against the bank for the proceeds of these notes collected by it.

Not a single issue involved in the first action was raised in the second. In *Asher v. Pegg*, 146 Iowa, 541, the plaintiff, under the name of Margaret Pegg, asserted the right to a widow's share in the estate of the deceased, and, this having been denied, she prosecuted a claim against the administrator of the estate for services rendered by her to deceased as housekeeper and assistant in carrying on his farm, and the court held that there was no identity whatever "either of law or fact between the claim asserted in the former action and the one which is now being asserted." The circumstance

that a person may have availed himself of a different remedy does not obviate the principle that that which has once been judicially determined shall not again be made the subject of judicial controversy. See *Reynolds v. Lyon,* 121 Iowa, 733. The failure of plaintiff in the former action was not owing to mistake of remedy, for that demanded was specific and precisely that to which he was entitled, if any. True, the adverse decision may have been owing to the *quantum* of proof exacted, for to have succeeded he must have established the contract as well as its performance by clear, definite and convincing evidence. *Chew v. Holt,* 111 Iowa, 362; *McDonald v. Basom,* 102 Iowa, 419; *Briles v. Goodrich,* 116 Iowa, 517; *Moore v. Pierson,* 6 Iowa, 279. This does not mean that the facts must be proven beyond reasonable doubt. *Skeggs v. Horton,* 82 Ala. 352 (2 South, 110) and *Sherrin v. Flinn,* 155 Ind. 422 (58 N. E. 549). But may amount to no more than saying that a higher degree of proof than exacted in actions at law is essential to constitute a preponderance of evidence. *Schmuck v. Hill,* 2 Neb. (Unof.) 79 (96 N. W. 158).

Whatever the explanation, more evidence was necessary to make out a case in the former suit than was essential to establish the right to recover for services rendered on the claim filed against the administrator. But the claimant voluntarily selected the forum in which to litigate his claim under the alleged contract, and our attention has not been directed to any decision holding that the effect to be given to a judicial decision depended on and is to be measured by the *quantum* of proof exacted. It is said that acquittal of a person in a criminal action is not conclusive in a civil action involving the same issue unless for a forfeiture, penalty, or the like exacting the same amount of proof, and the reason sometimes given is that the matter of motive or intent differentiates the two classes of actions, and at others that the evidence determinative in a criminal action is more than sufficient to support a civil action. In other words, the evidence might preponderate against the defendant and yet not be sufficient to exclude

all reasonable doubt. See *Stone v. U. S.*, 167 U. S. 184 (17 Sup. Ct. 778, 42 L. Ed. 130), explaining *Coffey v. U. S.*, 116 U. S. 436 (6 Sup. Ct. 437, 29 L. Ed. 684) ; *State v. Meek*, 112 Iowa, 338.

But the state never prosecutes a civil action based on a criminal act save for forfeiture, penalty, or the like, and for this reason the parties in criminal and civil actions are never the same. Because of diversity of parties, an adjudication in a criminal prosecution is not binding in the subsequent civil action instituted by an individual for the recovery of damages consequent of the wrongful act. Often several different actions may be maintained on a particular state of facts, and the *quantum* of evidence exacted in each is a matter to be considered in selecting the remedy to be sought and the forum in which to seek relief; but the determination of the issues presented is not any less binding on the parties because decided in one form of action rather than another. The fact that the issue has been decided by a court having jurisdiction of the parties and the subject-matter is that which renders the decision effective in support of a plea of an estoppel interposed in a subsequent action between the same parties involving the same issue. The amount of proof essential to establish an allegation of the petition, like the burden of proof and other matters, is a mere incident to the trial, exacted as the result of long experience as best adapted to the ascertainment of truth. Whatever the *quantum* of evidence required to establish a fact, or on whomsoever the burden of proof, the adjudication is binding on the parties and cannot again be litigated if properly interposed as a defense.

Cases like *Gwin v. Sumur*, 49 Mo. App. 361; *Porter v. Wagner*, 36 Ohio St. 471, 475, and *McNamara v. Arthur*, 1 Ball & Beatty, 175, are sometimes cited as sustaining a different view; but none of these were determined on the merits.

Many cases may be found in which a different *quantum* of evidence was required; but this was given no consideration in determining whether the decision of the issues involved

sustained the plea of estoppel. As bearing hereon, see *Wolverton v. Baker*, 86 Cal. 591 (25 Pac. 54); *Bruce v. Foley*, 18 Wash. 96 (50 Pac. 935); *Trayhern v. Colburn*, 66 Md. 277 (7 Atl. 459); *Fidelity, etc., Trust Co. v. Fridenburg*, 175 Pa. 500 (34 Atl. 848, 52 Am. St. Rep. 851); *Myers v. Kingstone Coal Co.*, 126 Pa. 582 (17 Atl. 891). To hold otherwise would permit a party to experiment with different forms of action in enforcing the same right and impair the force which always has been and should be given to solemn adjudication of issues properly raised and regularly decided. Of course, the evidence adduced on the hearing of causes in equity is frequently thought not to be of the conclusive character essential to warrant the relief prayed and a dismissal entered for that reason. Such a decree is negative merely, and it may be that the recitals would be construed as a sufficient reservation of the issues for an action at law—a point not now necessarily to be determined, for the decree in the former suit purported to be on the merits.

Specific performance has never been regarded as a remedy to be claimed by a litigant as a right, but is said to rest in the sound discretion of the chancellor. Where the evidence is sufficient, however, and there are no **3. SPECIFIC PERFORMANCE: discretion.** equitable considerations in the way, such decrees are entered as a matter of course. *Baltimore, etc., R. Co. v. Brubaker*, 217 Ill. 462 (75 N. E. 523); *Rogers v. Saunders*, 16 Me. 92 (33 Am. Dec. 635); *Yazoo, etc., R. Co. v. Railway*, 83 Miss. 746 (36 South, 74); *Shuman v. Willets*, 17 Neb. 478 (23 N. W. 358); *Steadman v. Handy*, 102 Va. 382 (46 S. E. 380); 36 Cyc. 550.

There were no peculiar equities in the former suit obstructing the granting of specific performance, and, as recited in the decree, relief must have been denied on the merits alone.

There were no peculiar equities involved in the former suit, and the evidence was such that, had the contract and performance thereunder been proven, the relief prayed must

have been granted as a matter of course. It was denied, as recited in the decree, on a finding that the claim of Arch Black was "without merit and not substantiated by the evidence." This adjudication of the precise issues now involved and essential to the maintenance of his claim against the estate of deceased is conclusive against him and should have been held to constitute an estoppel. The demurrer to the plea in estoppel should have been overruled.

III. Item 15 of the claim was a note of $300, dated October 18, 1902, and purporting to be signed by H. C. Black, Luman Black, and George Black, the latter by his mark. This had been assigned to claimant, and the only testimony tending to identify the note as having been signed by deceased was that of claimant, who testified as follows: "Q. Have you a note of George Black in your possession? A. Yes, sir; I have a note. Q. Will you be kind enough to let me see it? A. Yes, sir. (Exhibit A marked.) Q. Whose property is this note? A. Mine." The note was then received in evidence over objection as not having been properly identified, incompetent, and not binding on the administrator. The signature to a note upon which an action is founded, a copy of which has been attached to the petition, is presumed to be genuine unless its genuineness is denied by the person whose signature it purports to be, under oath. Section 3640, Code. Neither the original note nor copy thereof was attached to the claim or amendment thereto, and, as each item thereof was specifically denied, the burden of proof was on claimant to show the genuineness of the signature, prior to the introduction of the note in evidence. *Smith v. King*, 88 Iowa, 105; *Schulte v. Coulthurst*, 94 Iowa, 418. See, also, *Hay v. Frazier*, 49 Iowa, 454. It follows that the court erred in receiving the note in evidence.

4. NEGOTIABLE INSTRUMENTS: genuineness of signature: proof.

IV. Appellant asserted in his abstract that exceptions had been saved to the several instructions. This was denied by appellee, and to sustain his assertion plaintiff has presented

here a copy of the certificate of the trial judge and the reporter attached to the report of the trial in shorthand, certifying that ''all instructions given were duly excepted to by the party adversely affected or interested.'' Whether the exceptions were noted by the reporter in his report does not appear, as the transcript is not before us. Nor is it claimed that any exceptions to the instructions were preserved as required by section 3709 of the Code, or otherwise. Section 3675 of the Code authorizes the reporter to note in his report in shorthand or in writing ''the fact that the jury is instructed, all exceptions and objections to instructions given by the court on its own motion,'' and this report, when properly certified, undoubtedly would be sufficient evidence of the taking of exceptions to the instructions. But the Code nowhere authorizes the preservation of the record of such exceptions by the mere certificate of the judge and reporter that they were taken. This would enable a party to supply the record from memory of these officers, rather than to establish the preservation of exceptions by what was done at the time. We think, therefore, that the appellant has failed to sustain the abstract in this respect by the certification of the record.

5. INSTRUCTIONS: preservation of exceptions.

In view of another trial, however, it may be as well to suggest that the issues be clearly stated by the trial court, instead of copying the pleadings as a part of the instructions. See *Swanson v. Allen*, 108 Iowa, 419. Also, that genuineness of the signature to the note of $300 included in the claim ought not to be assumed in the instructions, but that this is a matter of proof.

6. INSTRUCTIONS.

Also, that the burden is not upon the defendant, in establishing his counterclaim for the use of the land alleged to have been occupied since 1886, to show that there was a mutual understanding between him and deceased that the latter should receive pay therefor. Upon proof that the claimant entered upon the land and used and occupied the same for his own benefit with the

7. USE AND OCCUPATION: prima facie case.

assent of the deceased, in the absence of other proof, a promise to pay a reasonable compensation therefor arose. 24 Cyc. 1139. The burden of proof was on the claimant to show that use of the land had been paid for, or that its use was to be gratuitous. *Oakes v. Oakes,* 16 Ill. 106; *Sterrett v. Wright,* 27 Pa. 259. And if claimed to be gratuitous, this was a matter to be set up in the pleadings. *Saddler v. Pickard,* 142 Iowa, 691.

Of course, the relation of the parties and the circumstances under which the land was occupied are to be considered in determining the understanding between the parties.

8. SAME.    But the rule prevailing with respect to the rendition of services to a relative living in a family has no application to such a case.

Because of the errors pointed out, the judgment is *Reversed.*