IN RE ESTATE OF MILTON R. STERNER.

D. W. BATES, Superintendent of Banking, Receiver, Claimant, Appellant, v. PAUL W. STERNER et al., Appellees.

No. 44073.

618

MARCH 8, 1938.

REHEARING DENIED JUNE 24, 1938.

L. D. Dennis, for appellant D. W. Bates, superintendent of banking, receiver of the Springville Savings Bank, claimant against Estate of Milton R. Sterner, deceased.

Don Barnes, Barnes, Chamberlain & Hanzlik, and E. H. Wadsworth, for appellees Paul W. Sterner and Paul W. Sterner, former administrator with will annexed of estate of Milton R. Sterner, deceased, and Fidelity & Deposit Company of Maryland.

E. A. Johnson, for appellee Carolyn M. Sterner.

Otto L. Schluter, for Dale O. Stentz, trustee in bankruptcy of Paul W. Sterner, bankrupt.

C. J. Lynch, for appellee J. U. Yessler, administrator with will annexed of estate of Milton R. Sterner, deceased. ·

Donnelly, Lynch, Anderson & Lynch, formerly attorneys for John T. Yocom, executor of estate of Edward Yocom, deceased, and now attorneys for D. E. Smith, trustee, assignee of the claim allowed in favor of John T. Yocom, executor, and against the M. R. Sterner's estate.

Otto L. Schluter, for Ona Foughty, claimant.

DONEGAN, J.—Milton R. Sterner, a resident of Springville, Linn county, Iowa, died testate on March 28, 1930, and his will was admitted to probate on April 16, 1930. Under the provisions of this will his widow received the homestead property and a life estate in other property, and, subject to this life estate, all the remainder of his property was given to his two children, Carolyn M. Sterner and Paul W. Sterner. The son, Paul W. Sterner, was appointed administrator with the will annexed on April 21, 1930, and on the same day he qualified by taking the oath prescribed by law and filing a bond in the sum of $10,000 with Fidelity & Deposit Company of Maryland, as surety. The real estate left by him consisted of some farms and town property. The administrator filed his first report on June 6, 1933, and his second report was filed on October 17, 1934. These reports alleged that Paul W. Sterner and his sister, Carolyn M. Sterner, had advanced from their own funds the sum of $8,307.23 for the purpose of paying bills and notes owing by the estate, and asked credit for this amount. On an ex parte hearing, an interlocutory order was entered on June 8, 1933, approving the first report and allowing this claim as a proper charge against the estate. No order of approval appears to have been entered on the second report.

On October 22, 1932, L. A. Andrew, superintendent of banking of the state of Iowa, as receiver of Springville Savings Bank of Springville, Iowa, filed a claim against the estate in three counts. The first count asked for an allowance of $1,700 on a stock assessment on stock in the bank owned by M. R. Sterner at the time of his death. The second count alleged the execution by M. R. Sterner, together with other directors of the bank, of two separate agreements guaranteeing the payment of certain bills receivable in the bank. One of these agreements covered such bills receivable in the sum of $32,416.46, and the other covered such bills receivable in the sum of $29,149.46. The

third count alleged that the decedent, M. R. Sterner, and one Chris Jenson had jointly leased a farm in Linn county from the bank, and that there was due and owing the claimant thereon the sum of $10,250.

After Sterner, administrator with the will annexed, had filed his second report on October 17, 1934, D. W. Bates, who was the successor of L. A. Andrew, as superintendent of banking of the state of Iowa and as receiver of the Springville Savings Bank of Springville, Iowa, on November 3, 1934, filed objections to the reports of said administrator, and asked to have him removed. Ground 81 of said objections alleged, in substance, that the purpose of the administrator in having said claim allowed was to secure the assets to himself and his sister and thus defeat rights of other creditors; and ground 82 alleged, in substance, that the second report of the administrator showed that he had paid to himself and his sister the sum of $1,542.18 to apply upon their alleged claim of $8,307.23, and that such payment to the administrator and his sister constituted a preference, it appearing from the records of the estate that court costs, attorney's fees, and taxes upon the property of the estate were unpaid, and there are other claims of the same class which have not been paid. Hearing was had on these objections, and on December 3, 1935, the court entered its order removing Paul W. Sterner, as administrator, and appointing in his place J. U. Yessler, administrator with the will annexed. This order further found and adjudged that Paul W. Sterner had appropriated and converted to his own use property belonging to the estate in the value of $9,915.09, and ordered that this sum, with interest, be paid to the newly appointed administrator on or before December 20, 1935.

Paul W. Sterner, administrator, failed to comply with the order of court, and, on January 8, 1936, J. U. Yessler, the newly appointed administrator with the will annexed, filed an application under sections 11984 and 11985, Code of 1935, asking for judgment on the bond against said Paul W. Sterner and Fidelity & Deposit Company of Maryland, surety on the bond, in the sum of $10,000, the full amount of the bond, and hearing on such application was fixed by the court for the 20th day of January, 1936. Paul W. Sterner, administrator, and the bonding company appeared and filed objections to such application. Hearing was had on the application and the objections thereto,

and, on March 4, 1936, the court entered an order finding that said Paul W. Sterner had failed to comply with the court's ruling and order made on December 3, 1935, and pay to J .U. Yessler, said administrator, the sum of $9,915.09 and interest from July 1, 1931, or any portion thereof; and that the total amount of said principal and interest at the time of entering said order amounted to $12,627.96. The court entered judgment in favor of Yessler, administrator, and against Sterner and the bonding company, in the total sum of $10,000, with interest thereon from the 20th day of December, 1935, without prejudice to the estate to collect from Sterner the balance of said sum over and above the amount of the judgment rendered on the bond.

On May 5, 1936, the Fidelity & Deposit Company of Maryland filed objections to the allowance of the claim filed by the receiver, and, on the same day, Paul W. Sterner and Carolyn M. Sterner filed similar objections. On May 28, 1936, J. U. Yessler, the newly appointed administrator with the will annexed, joined in the objections to the allowance of the claim of the receiver filed by the bonding company, and added other grounds thereto. Hearing was had on said claim and the objections thereto, and, on the 17th day of September, 1936, at the close of claimant's evidence, the objectors filed a motion asking the court "to not permit the filing of said claims other than the claim for $1,700.00 bank assessment" for six reasons therein enumerated, all of which were based on the failure to file the claim within twelve months after giving of notice of his appointment by the administrator. The court entered an order sustaining this motion. Bates, receiver, has appealed from this order, and, as we shall later see, the action of the trial court, in sustaining this motion and holding that the claim of the receiver should not be allowed to be filed, presents the only questions which it will be necessary for us to consider and determine on this appeal.

On the 19th day of September, 1936, the trial court entered an order overruling objections numbered 81 and 82, of D. W. Bates, receiver, to the allowance of the credit of $8,377.23 claimed to Paul W. Sterner, administrator, in his first and second reports; said order further established and adjudicated that said sum was a just claim in favor of said Paul W. Sterner and Carolyn M. Sterner, for which credit properly had been

given; and confirmed the allowance thereof. Bates, receiver, appealed from this order, and J. U. Yessler, administrator with the will annexed, also took a separate appeal therefrom.

Following the entry of the last order above referred to, Paul W. Sterner, both in his individual capacity and as administrator, and Fidelity & Deposit Company of Maryland, on September 22, 1936, filed a petition for a new trial, in which they asked the court to set aside the order and judgment entered on March 4, 1936, and the ruling and order entered on December 3, 1935. To this petition, both Yessler, administrator with the will annexed, and Bates, receiver, filed answers opposing the granting of such petition. Hearing was had and at the close thereof, the court, on February 15, 1937, entered an order setting aside the order and judgment of March 4, 1936, and the ruling and order of December 3, 1935. Later, on March 27, 1937, the court, on its own motion, entered an order which expunged the order of February 15, 1937, and in lieu thereof entered an order sustaining ''that portion of the petition for new trial, which asks that the judgment entered by the Court on the 4th day of March, 1936, in said cause, against Paul W. Sterner, administrator with the will annexed of the estate of Milton R. Sterner, deceased, and Fidelity and Deposit Company of Maryland, surety on the bond of said administrator, be cancelled, set aside and held for naught. Said petition for new trial is otherwise overruled,'' etc. From this substituted order entered March 27, 1937, setting aside the judgment of March 4, 1935, and granting new trial, Bates, receiver, appealed, and J. U. Yessler, administrator with the will annexed, also appealed therefrom.

On this appeal, therefore, we have three orders or judgments of the trial court from which Bates, receiver, has appealed, and, as to two of these, Yessler, administrator, has also appealed. These appeals have been argued and submitted separately in this court—the appeal of Bates, receiver, being cause No. 44073, and the appeal of Yessler, administrator, being cause No. 44074, in this court. Leaving out of consideration the chronological order of the judgments and orders appealed from, and following the order of the errors alleged and relied on for reversal, we have for consideration, in this appeal, the following alleged errors of the trial court: first, error in entering the order of March 27, 1937, setting aside the order and judgment of March 4, 1936, and granting new trial; second, error in entering the order of Sep-

tember 19, 1936, which overruled objections 81 and 82 of Bates, receiver, to first and second reports of Sterner, administrator, allowed claim of Sterner and his sister, and confirmed and established said claim; and, third, error in entering the order of September 17, 1936, refusing to allow the claim of Bates, receiver, based upon the guaranty agreement of Milton R. Sterner covering bills receivable of Springville Savings Bank. As already stated, J. U. Yessler, administrator with the will annexed, also appealed separately from the orders constituting the basis of the first and second allegations of error set out in this appeal. The appeal taken by him was submitted to this court in November, 1937, at the same period at which this appeal was submitted, and opinion in that appeal was filed herein January 18, 1938, and is reported in 224 Iowa 605, 277 N. W. 366. That opinion fully considered and reversed the judgments and orders of the district court of March 27, 1937, and September 19, 1936, which are the basis of the first and second errors alleged and relied upon by the appellant for reversal in this appeal. Following and adopting the holdings of this court in that opinion, and without further discussion, we hold that, in entering the orders of March 27, 1937, and September 19, 1936, the trial court committed error, and that said orders are reversed.

The only matter remaining for consideration is, therefore, the correctness of the trial court's ruling in sustaining the motion of the objectors that Bates, receiver, be not permitted to file his claims. As already stated, this claim was originally in three counts. By agreement of parties, the claim in count 1 for $1,700, growing out of stock assessment, was allowed; that part of count 2, alleging guaranty agreement covering bills receivable, dated August 15, 1923, was withdrawn; and count 3, claiming rentals due under lease of farm, was also withdrawn. The only part of the claim for consideration here is that based upon the alleged guaranty agreement covering bills receivable, entered into October 21, 1927. From the evidence introduced it appears that some of the bills receivable covered by this agreement were paid prior to the death of Milton R. Sterner; that others were paid between the time of his death and the filing of the claim by the receiver; that still others were paid after the filing of the claim by the receiver, but before hearing; and that at the time the order was entered, from which the

appeal here involved was taken, there was less than $10,000 involved in the bills receivable which had not then been paid. The grounds upon which the motion of the objectors asked that the claim be not permitted to be filed, and upon which the argument on this appeal is centered, are, in substance, that the evidence shows that the claim here involved was not filed within a year from the giving of notice of the appointment of the executor; that the claim is of such a nature that it should have been filed within such year; and that the claimant has failed to show equitable circumstances relieving him from the bar of the statute requiring such claim to be filed within one year.

■■■ The appellant contends that the claim is not barred by the statute, because it is a contingent, undetermined claim, which did not arise during the lifetime of decedent nor until after the statute of limitations for filing claims against the estate had run, and that it need not be filed within the one year period, because the contract upon which it was based expressly imposed liability thereunder on decedent's legal representatives and heirs, as well as on decedent himself. Appellant seeks to distinguish the contract involved in this appeal from a simple contract of guaranty, under which the guarantor binds only himself, by calling attention to the fact that, in the contract here involved, the obligation was not confined to the maker of the contract himself, but bound his "heirs, executors, administrators, trustees, receivers and/or assigns." In support of this contention appellant cites Baker v. Baker, 220 Iowa 1216, 264 N. W. 116, 103 A. L. R. 995; Security Fire Insurance Co. v. Hansen, 104 Iowa 264, 73 N. W. 596; and Royal Ins. Co. v. Davies, 40 Iowa 469, 20 Am. Rep. 581. In neither the Baker case nor the Security Fire Insurance Company case, however, was there involved a claim against the estate of a decedent. In both of these cases the action was to enforce a contract against the heirs of the decedent, and not against his estate. In the Royal Insurance Company case, one Davies had signed an indemnifying bond for one Kidder, who had been appointed an agent of the insurance company. The bond bound the surety, his "heirs, executors and administrators." The surety, Davies, died before the termination of the contract of agency. Thereafter, the contract of agency was terminated, and it was claimed by the insurance company that the agent had failed to settle for certain sums of money received by him. The opinion states some of the

allegations of the petition, but there is nothing to indicate that the action was to enforce against the estate, instead of to recover against an heir. The defense was that liability on the bond ceased with the death of Davies, the surety, and the trial court so held. In reversing the case, this court said:

"The terms of the bond continue the liability of the sureties as long as Kidder should act as agent of the company and this liability likewise by the terms of the bond, extends to the heirs and legal representatives of the sureties. They are bound by as clear and unmistakeable language as that which binds the sureties personally."

We find nothing in any of these cases holding that, where a contract of a decedent is made binding upon his heirs, executors and administrators, such contract can be enforced against his estate without filing a claim in the manner provided by law and within the period of limitation fixed by statute.

The appellees, on the other hand, contend that the contract, under which appellant seeks to recover, is such that a claim based on it must be filed against the estate within one year from the giving of notice of his appointment by the administrator, as provided by section 11972 of the Code. In support of this contention appellees cite Nichols v. Harsh, 202 Iowa 117, 209 N. W. 297; Chicago & Northwestern Ry. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936; State ex rel. Trust Company v. Fosseen, Probate Judge, 192 Minn. 108, 255 N. W. 816, 94 A. L. R. 1149, and other authorities. The argument based upon these authorities is, that the contract here involved, being an absolute agreement and creating a binding obligation that the bills receivable therein referred to would be paid, imposed a liability on the decedent, Sterner, from the time of its execution, and that such liability, being in existence at the time of Sterner's death, could only be enforced against his estate by filing a claim as required by statute. We think the authorities cited by the appellees support this contention.

But, the appellant further contends that, conceding the claim to be such as should have been filed within the twelve months' period, the evidence shows peculiar circumstances which, under the provisions of the statute itself, entitle him to equitable relief. The determination of this question requires a consideration of the evidence and of the statute here involved.

Section 11972, as it appears in Codes 1927 to 1935, inclusive, is as follows:

"All claims of the fourth of the above classes, not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or supreme court at the time of his death, or unless peculiar circumstances entitle the claimant to equitable relief."

 It is apparent from the language of this section that the bar against claims not filed within twelve months from the date of giving notice by the administrator is not absolute, and that a claimant may be relieved from such bar by showing peculiar circumstances which entitle him to equitable relief. Briefly stated, the peculiar circumstances upon which the appellant relies are substantially as follows: The contract upon which liability is here sought to be enforced was executed on the 21st day of October, 1927, approximately two and one-half years before the death of Sterner, on March 28, 1930. Sterner and other signers of the contract were directors of the bank. The contract was not signed by them in their official capacity as directors, but as individuals. The contract guaranteed the payment, on or before one year from the date of its execution, of each and every bill receivable enumerated on the back thereof. So far as the record shows, the business of the bank from the date of the signing of this contract until the death of Sterner was conducted by its officers and board of directors, and continued to be so conducted thereafter until the appointment of a receiver of the bank on July 15, 1932. Prior to that time, from 1920 to 1931, Paul W. Sterner had been a bookkeeper in the bank. The evidence shows that he was at one time also the cashier of the bank, but we have been unable to determine from the record during what period he acted as cashier, although it might be reasonable to infer that it was during the period following that in which he acted as bookkeeper. It was the duty of Paul W. Sterner and the other directors and officers to look after the interests of the bank, and this required that they use diligence in collecting obligations owing to the bank, so that, if reasonably possible, its business might be conducted with safety to its depositors and creditors and profit to the

stockholders, but, in any event, so that, if the business of the bank should result in loss, the depositors and creditors, as well as the stockholders, would not suffer because of the failure of the officers and directors to collect such obligations. It was, therefore, the duty of Paul W. Sterner and other officers and directors of the bank to see that the bills receivable covered by the guaranty agreement of Sterner and the other guarantors were paid by the makers of such bills or the signers of the guaranty agreement. It was also the duty of Paul W. Sterner and the other officers and directors of the bank, in case any of the makers of the bills receivable or signers of the guaranty agreement died, to see that a proper claim was filed against the estate of such deceased person. It is apparent that the filing of such a claim against the estate of Milton R. Sterner would have been against the personal interests of Paul W. Sterner and his sister, as legatees and devisees under their father's will, because whatever would be received by them eventually from the estate would be diminished by any amount required to be paid by the estate upon the claim of the bank.

As to the other signers of the guaranty agreement also, we think there was a conflict between their personal interests and official duty as directors of the bank. It is quite probable that, if a claim based on the guaranty contract had been filed by the bank against the Sterner estate, stockholders, depositors and creditors of the bank would have become aware of the existence of the contract and the doubtful character of the bills receivable covered by it, and that the publicity given to these facts would result in demands being made that such bills receivable be paid either by the makers thereof or by the guarantors, including the other directors. Not only was no claim filed by its officers and directors in behalf of the bank, but there is ample in the record to indicate that, during the period from the execution of the contract in October, 1927, to the appointment of the receiver in July, 1932, there was a deliberate attempt on the part of those in charge of the bank's affairs to conceal, if not to falsify, the records by which the indebtedness owing to the bank on the bills receivable covered by the guaranty agreement should have been disclosed. While, perhaps, not altogether excusing the failure of the examiners for the state banking department to follow up the execution of the guaranty contract by seeing that it was enforced, we are not inclined to believe

that the bank examiners would have overlooked the existence of the contract or would have failed to take any action in regard to it, from the time it was executed until the time the receiver was appointed, if its existence and the condition of the indebtedness guaranteed by it could have been discovered readily from an examination of the bank's records. The evidence discloses that, at the time the receiver was appointed, the bills receivable covered by the guaranty contract were not found in the bank; that, although a thorough search was made, such bills receivable were never discovered by the receiver; and that it was only after a very exhaustive examination and audit of the bank's affairs had been made that the receiver was able to discover that some of such bills receivable had been paid and that others were still unpaid.

■■■ Certainly, the condition of the books and records at the time the receiver was appointed was sufficient to excuse his delay in filing claim after his appointment; and, even if the state banking department may be said to be at fault in failing to have kept in touch with what was being done in regard to the guaranty agreement after its execution, and in failing to see that a claim was filed under such contract within one year from the appointment of the administrator of the Milton R. Sterner estate, a matter which we do not decide, this does not change the fact that it was the duty of Paul W. Sterner and the other officers and directors of the bank to see that such claim was filed. While the bank is a legal entity and, as such, may be bound by the same rules of law as apply to human beings, it does not follow that it is not entitled to the application of equitable principles, where a human being might be estopped by his own conduct. Being a legal entity only, the bank could not act except through human agencies, that is, through its officers and directors. The law imposed upon such officers and directors the duty to act for the benefit of the bank and, as a result of their failure to act in this case, the bank, and through it the depositors, creditors and, perhaps, stockholders are threatened with a loss because of the failure of such officers and directors, to perform their duty. Not only that, but the same officers and directors, through whose failure to perform their duty the bank, and through it the depositors, creditors and, perhaps, stockholders will be called upon to suffer a loss, are themselves, in their individual capacities as signers of

the guaranty contract, relieved of a liability which should be theirs and which is thus imposed upon the bank.

It is well settled that, in determining whether peculiar circumstances exist entitling a claimant to relief from the bar of the statute, this provision of the statute must be liberally construed. Nichols v. Harsh, 202 Iowa 117, 209 N. W. 297; Simpson v. Burnham, Admx., 209 Iowa 1108, 229 N. W. 679; Chicago & Northwestern Ry. Co. v. Moss, Admr., 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936; Anthony v. Wagner, 216 Iowa 571, 246 N. W. 748; Simpson College v. Drake, Admr., 219 Iowa 30, 257 N. W. 443. We think the circumstances disclosed by the evidence in this case are, at least, peculiar, if, indeed, they should not be characterized by language somewhat stronger; and that, following the liberal construction which should be given to this provision of the statute, these peculiar circumstances are such as to entitle the claimant to be relieved from the provision of the statute which required the claim to be filed within one year from the giving of notice of his appointment by the administrator. In so holding, we are, of course, confining our decision to the equitable issue, as to whether there are peculiar circumstances sufficient to entitle the claimant to relief, and we must not be understood as establishing the claim itself upon its merits.

For the reasons stated in the opinion, the three orders and judgments of the trial court involved in this appeal must be, and they are hereby, reversed.—Reversed.

STIGER, C. J., and KINTZINGER, SAGER, and MILLER, JJ., concur.